**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **UNITED STATES OF AMERICA**<br><br>v.<br><br>**Wayne DUNICH-KOLB,**<br>　　　　　　　**Defendant.** | Crim. No. 14-150 (KM)<br><br>**OPINION and ORDER**<br>(Bail Appeal) |

The defendant, Wayne Dunich-Kolb, faces a Second Superseding Indictment that charges him with assisting in the preparation of false tax returns, mail fraud, and aggravated identity theft. This matter comes before the court on a motion (DE 70) to revoke an oral opinion and order of detention entered by Magistrate Judge Michael A. Hammer, Jr. That order and opinion found that Mr. Dunich-Kolb had violated his conditions of release, revoked his bail, and remanded him to the custody of the U.S. Marshals pending trial, which is scheduled for January 8, 2019. Viewing the matter *de novo*, for the reasons expressed herein, I affirm Judge Hammer's order and deny the motion for release from custody.

### I.  Background

For some years, the defendant has been in the business of preparing federal tax returns. On March 24, 2014, a federal grand jury indicted Mr. Dunich-Kolb on nine federal tax charges: five of aiding and assisting in the preparation of false returns of clients (26 U.S.C. § 7206(2)), and four of subscribing false tax returns of his own (26 U.S.C. § 7206(1)). At the time, he was already serving a four-year state sentence for theft, based on his diversion of clients' state and federal tax payments totaling some $189,000. He has completed service of that state sentence.

1

On April 17, 2014, Mr. Dunich-Kolb had a bail hearing on his federal charges before the Hon. Joseph A. Dickson, U.S. Magistrate Judge. Judge Dickson entered an order setting conditions of release (the "Bail Order", DE 15). The defendant was released on a $50,000 unsecured appearance bond. The bond was co-signed by the father, Warren Kolb, who agreed to act as third-party custodian.

Other conditions of release included four that are particularly pertinent here:

1. Defendant was not to violate "any federal, state or local law while on release."
2. Travel was restricted to New Jersey.
3. Defendant was barred from any contact with any "victim or potential witness."
4. Defendant was required "to seek employment, but not in any tax field."

The Bail Order advised the defendant that any violation "may result in the immediate issue of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both." Defendant signed the order, acknowledging that he was "aware of the conditions of release," promising "to obey all conditions of release," and affirming that he was "aware of the penalties and sanctions set forth" in the Bail Order. As third-party custodian, the father agreed to supervise the defendants' compliance with conditions of release; make every effort to assure his appearance at court proceedings; and notify the court if the defendant violated any conditions of release. (DE 15 at 1)

On December 14, 2016, a federal grand jury returned a ten-count superseding indictment. (DE 27) Counts 1–7 charge Dunich-Kolb with preparing false and fraudulent returns on behalf of his clients, in violation of

26 U.S.C. § 7206(2). Those counts allege that Dunich-Kolb caused his clients to form fictitious partnerships and S corporations, and fabricated losses and deductions in relation to those fictitious businesses. Counts 8–10 charge Dunich-Kolb with subscribing false tax returns that understated his own income for tax years 2006, 2007, and 2008, in violation of 26 U.S.C. § 7206(1). At the arraignment on this Superseding Indictment, no change to the previous conditions of release was sought or ordered. (See DE 28.)[1]

On March 28, 2018, the grand jury returned a Second Superseding Indictment (DE 50), which is the currently operative charging document. The Second Superseding Indictment has twenty-nine counts. Counts 1–7, as before, charge Dunich-Kolb with preparing false and fraudulent returns on behalf of his clients, in violation of 26 U.S.C. § 7206(2). Counts 8–12, also charging client-return fraud, were new. Counts 13–15, like counts in the prior indictment, charge Dunich-Kolb with filing false tax returns that understated his own income for tax years 2006, 2007, and 2008, in violation of 26 U.S.C. § 7206(1).

Counts 16–27 of the Second Superseding Indictment, all new, charge mail fraud in violation of 18 U.S.C. § 1341. These counts charged, among other things, that Mr. Dunich-Kolb diverted clients' tax refunds to his own benefit. Those offenses are alleged to have been committed while Dunich-Kolb was on release pursuant to the Bail Order. (DE 50 at 9 ¶ 2) Counts 28 and 29, also new, charge aggravated identity theft (using the social security numbers of deceased persons to obtain tax refund payments), in violation of 18 U.S.C. § 1028A. A new arrest warrant issued. (DE 52)

On April 2, 2018, Magistrate Judge Michael A. Hammer conducted an initial appearance and an arraignment on the Second Superseding Indictment. On the same date, he heard and decided the government's motion to revoke

---

[1] It was at this time that counsel stated that he would be moving for an order that his client was not competent to stand trial. After holding an evidentiary hearing with experts, I denied that motion on March 27, 2017. (DE 35)

bail and detain the defendant pending trial, pursuant to 18 U.S.C. § 3148. Based on several factors, including the commission of further crimes while on release, Judge Hammer revoked the prior Bail Order and ordered the defendant detained pending trial. His order ("Detention Order") is at DE 56, and the transcript of his oral opinion ("Tr.") is at DE 69.

On October 25, 2018, defendant filed his motion pursuant to 18 U.S.C. § 3145(b) for revocation of Judge Hammer's Detention Order and for release from custody. (DE 70) On November 19, 2018, the government filed its opposition. (DE 73) I requested copies of the exhibits proffered by the government, which I have received. I expressly offered defendant the option of submitting a reply, but he has elected not to do so. (DE 74)

## II. Discussion

### A. Applicable Standards

When reviewing a magistrate judge's pretrial detention order, a district judge must make an independent, *de novo* determination. *See United States v. Delker*, 757 F.3d 1390, 1394 (3d Cir. 1985). The record compiled before the magistrate judge and the magistrate judge's reasoning may be considered, but no deference is given.

A defendant who has violated a condition of release is subject to revocation of release and an order of detention. 18 U.S.C. § 3148(a). Release of such a person is merited if the following conditions apply:

> If the judicial officer finds that there are conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community, and that the person will abide by such conditions, the judicial officer shall treat the person in accordance with the provisions of section 3142 of this title and may amend the conditions of release accordingly.

18 U.S.C. § 3148(b)(2). Revocation of release will be ordered, however, under the conditions set forth under the two-pronged analysis of 3148(b)(1) and (b)(2).[2] Both must be satisfied if revocation is to be ordered.

The first, (b)(1) prong may be satisfied in either of two alternative ways:

Under (b)(1)(A), on a showing of probable cause that the defendant breached the conditions of release by committing a felony, the statute imposes a rebuttable presumption of detention based on dangerousness:

> If there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community.

18 U.S.C. § 3148(b)(1)(A).

Alternatively, under (b)(1)(B), the government may introduce clear and convincing evidence that the defendant has violated any "other condition" of release (*i.e.*, other than commission of a felony). 18 U.S.C. § 3148(b)(1)(B).

The second, (b)(2) prong may likewise be satisfied in two ways:

---

[2] (b) Revocation of Release.— . . . . The judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer—

    (1) finds that there is—

    (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

    (B) clear and convincing evidence that the person has violated any other condition of release; and

    (2) finds that—

    (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or

    (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

Under (b)(2)(A), the court must assess danger and risk of flight, applying the so-called "3142(g) factors":

(1) the nature and circumstances of the offense charged, including whether the offense involves a controlled substance or firearm;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. *See* 18 U.S.C. § 3142(g). *See also United States v. Traitz*, 807 F.2d 322, 324 (3d Cir. 1986); *United States v. Coleman*, 777 F.2d 888, 892 (3d Cir. 1985).

Under the second, (b)(2)(B) alternative, the court may detain a defendant who simply will not comply—*i.e.*, one who is unlikely to abide by any condition or combination of conditions of release.

As to risk of flight, the government's burden under the Bail Reform Act is proof by a preponderance of the evidence. As to danger to the community, the government's burden is clear and convincing evidence. *See United States v. Himler*, 797 F.2d 156, 160-61 (3d Cir. 1986).

I digress for a moment to address the concept of "dangerousness" in the context of revocation of release. When pretrial release is considered as an original matter, the rebuttable presumption arises only from enumerated offenses, including specified serious offenses involving controlled substances, firearms, or minor victims. *See* 18 U.S.C. § 3142(e)(3). Under 18 U.S.C. § 3148(b)(1)(A), however, commission of *any* felony while on release, in violation of bail conditions, is presumed to be a proxy for dangerousness.

Even as an original matter, however, dangerousness *may* encompass economic harm, and the government cites ample case law to that effect. *See, e.g., United States v. Reynolds*, 956 F.2d 192, 192 (9th Cir. 1992) (citing *United States v. Provenzano*, 605 F.2d 85, 95 (3rd Cir.1979)); Gov't Brf., DE 73 at 9. Those concerns are heightened with respect to a defendant who, granted bail, violates conditions of release. The defendant's willful persistence in committing

6

economic crimes may surely give rise to the presumption of dangerousness. *See, e.g., United States v. Bertoli*, 854 F. Supp. 975, 1161 (D.N.J.), *aff'd in part, vacated in part on other grounds*, 40 F.3d 1384 (3d Cir. 1994) (denying bail pending appeal when the defendant, while free on bail pending trial, had conspired to cause and caused racketeering proceeds to be transferred); *United States v. Possino*, No. CR 13-00048-SVW-3, 2013 WL 1415108 (C.D. Cal. Apr. 8, 2013) (denying bail when the defendant had allegedly participated in a market manipulation scheme while on pretrial release).

### B. Application to this Case

Magistrate Judge Hammer focused on (b)(1)(A) (presumption of dangerousness based on felonies committed while on release) and (b)(2)(B) (person unlikely to abide by conditions of release). Those factors perhaps furnish the most direct route to an order of detention. I nevertheless consider the two alternative factors, in light of the record and evidence proffered by the government.

#### 1. § 3148(b)(1)

The government properly invoked the presumption of dangerousness under 18 U.S.C. § 3148(a)(1)(A). Under the Bail Reform Act, probable cause triggering a presumption may be established by an indictment. *See United States v. Suppa*, 799 F.2d 115, 119 (3d Cir. 1986). Here, the Second Superseding Indictment charges that Mr. Dunich-Kolb committed multiple federal tax and fraud felonies while on pretrial release.

Counts 8–12 charge additional counts of submitting fraudulent returns on behalf of clients, dating from January 2016 through April 2017, during the period of release. (DE 50 at 6) Counts 16–27 charge mail fraud, consisting of, *inter alia*, diversion of clients' refund checks, and state, in so many words, that the offenses were committed while Dunich-Kolb was on pretrial release. (DE 50 at 9 ¶ 2) Counts 28 and 29 charge aggravated identity theft in December 2016 and January 2017, also during the period of release on bail. (DE 50 at 15) The

Second Superseding Indictment alone, then, if unrebutted, would discharge the government's burden as to dangerousness.

In addition, by the alternative route of (b)(1)(B), the government has proffered sufficient evidence that the defendant violated other conditions of release, including the prohibitions on tax-related employment, unauthorized travel outside the District of New Jersey, and contact with potential witnesses or victims. These "other violation[s]," I find, are amply established.

    a) *Prohibition on tax-related employment.* The government proffers[3] deposits of checks from clients bearing such notations as "tax preparation." Some $300,000 in revenue from the tax preparation business was deposited in 2016 and 2017. The government also points to logins to online tax preparation software by "Adriatic Tax Planning LLC," traceable to the defendant's Montvale home; and actual tax returns prepared by entities affiliated with the defendants. (Gov't Exs. 1–6). In a letter to "Fran," discussed further below, Dunich-Kolb admits that he has taken elaborate steps to conceal his continuing tax preparation activities. (Gov't Ex. 7) All this activity occurred during the period of release under the Bail Order.

    b) *Unauthorized travel outside New Jersey.* The government proffers statements of clients that they met with Dunich-Kolb in New York in connection with preparation of their taxes. It has submitted copies of credit card receipts, evidence of postal transactions, EZ-Pass records of Hudson river crossings, a 2017 New York traffic ticket, and evidence that in December 2016 the defendant underwent elective cosmetic surgery in New York.

    c) *Prohibited contact with potential witnesses or victims.*

---

[3] The rules of evidence do not apply in detention proceedings, and the government may proceed by proffer. *See* 18 U.S.C. 3142(f); *Delker*, 757 F.2d at 1395; *United States v. Perry*, 788 F.2d 100, 106 (3d Cir. 1986). As a precaution, I have requested that the government supply copies of the proffered evidence, which I have inspected.

   (i)   The government proffers a text message, dated February 6, 2018, from the defendant to J.S., coaching him as to his response to a grand jury subpoena. The message refers contemptuously to the youth of a person, apparently IRS Special Agent Helmstetter, "a 30 year old" who is "ONLY using [J.S.] to get information"; invokes their friendship of 20 years; urges that "friends help each other"; and states that the "[l]ess said to a 30 year old . . . the better." [4] (Gov't Ex. 15)

   (ii)  Also proffered is a February 12, 2018, text message from defendant to J.S. saying "I want to talk to you before you leave the house on answers to the questions to make this easy for both of us and get you uninvolved. . . . [Another person, W.K.] can easily say talk to [J.S.] as knowing NOTHING about nothing. EVERYTHING will be fine for all of us." (Gov't Ex. 15)

   (iii) In a text the following day, February 13, 2018, Dunich-Kolb offered J.S. further coaching on what to say to the investigators, and directed him to "delete all [his] texts." (Gov't Ex. 15)

   (iv)  On August 14, 2017, while A.S., one of defendant's tax preparation clients, was being interviewed, Dunich-Kolb sent him text messages, stating "Call me back . . . . less you say the better to the kid who started all this for me." Defendant admonished A.S. to be "calm to [Special Agent] Jonathan Helmstetter and not confessing your life story to a punk kid." (Gov't Ex. 16)

By either the (b)(1)(A) presumption or the (b)(1)(B) route, the first, (b)(1) prong is satisfied.

---

[4] Defendant's feelings on the subject of Special Agent Helmstetter are related further in my opinion on the issue of Dunich-Kolb's competence to stand trial. (DE 35 at 11–14).

9

## 2. § 3148(b)(2)

***Subsection (b)(2)(B).*** I will begin with the second, (b)(2)(B) alternative: whether the defendant is unlikely to comply with any conditions of release. Here, I find myself in agreement with Magistrate Judge Hammer that the defendant had demonstrated that he was unlikely to abide by any condition or combination of conditions of release under (b)(2)(B). Indeed, Judge Hammer was "left to wonder how it's possible to conclude that he would." (Tr. 12)

The defendant's track record is the best guide to his future compliance. Granted fairly lenient conditions of release, the defendant thoroughly trampled them. His actions and statements evince a near-total, bad faith disregard for the conditions of Judge Dixon's Bail Order.

As outlined in the previous section, Dunich-Kolb was indicted for the commission of multiple federal felonies while on release. Many were precisely those that had led to his indictment in the first place. Others consisted of diverting clients' tax refunds to his own use.

He traveled to New York, apparently with some frequency, without seeking clearance from Pretrial Services.

In addition, Dunich-Kolb continued to act as a professional tax preparer. In March 2016, confronted with statements of a witness that he remained in that business, the defendant through counsel denied it.

That violative conduct was willful. The government has submitted a letter to "Fran," in which Dunich-Kolb essentially admits that he continued to act as a tax preparer, both on his own and by correcting and amending his father's work, and has engaged in an elaborate cover-up of his violation of bail conditions:

> I promised New Jersey that I would not prepare taxes in New Jersey again, but with a Wyoming telephone number, a Las Vegas, Nevada Post Office Box and an email account based out of Switzerland, that my computer client swears is government hack proof I have already amended 18 tax returns that my Dad prepared with more waiting and the tax information here for 3 people who never filed in my absence and who were waiting for me. If you or

10

> your children are unhappy with the 2012, 2013 and 2014 tax returns, they can be corrected and amended. When I first met you many years ago, I amended and corrected prior tax returns for you. Dad does not know, and the extra income comes in handy, even though I am discounting everything. The local New Jersey clients have been giving me their tax information either at their home or at a local bar and grill over drinks and a meal. . . .
>
> My new email address is ADRIATIC TAX PLANNING[*redacted*] (Switzerland). My cell phone is 307-[*redacted*] (Wyoming). Local mailing address is [*redacted*] – Montvale, New Jersey and business address for Adriatic Tax Planning LLC is P.O. Box [*redacted*]- Las Vegas, Nevada [*redacted*]. Now if the Internal Revenue Service wants to snoop and target me, it will not be as easy. Eventually I am changing my first and last name and social security number as well, since Google destroyed Wayne Dunich-Kolb.

(Gov't Ex. 7)

Defendant, moreover, attempted while released on bail to coach potential witnesses regarding their testimony. (*See* p. 9, *supra*.) He dangled the prospect of keeping them uninvolved in the criminal case if they hewed to the principle "the less said, the better." Such obstructive efforts demonstrate danger to the community. These facts also demonstrate a level of defiance which compels a conclusion that the defendant is unlikely to comply with virtually any reasonable conditions of release the court might impose.

**Subsection (b)(2)(A).** That said, I will nevertheless consider in the alternative whether there are particular conditions of release that would adequately assure the defendant's appearance and the safety of the community. The defendant has suggested some conditions of release, but I find them inadequate.

### Home confinement, electronic monitoring.

Home confinement, even enforced by electronic monitoring, is inadequate. Even as to risk of flight, it is of limited utility unless backed by some good faith, which is not evident here. As to dangerousness, it is likely to have very little efficacy under the circumstances of this case.

11

Electronic monitoring, of course, does not prevent a defendant from fleeing; at best, it provides prompt notice that he has fled. It is a useful monitoring tool, but as a preventative it is limited. *See United States v. Argas*, 2013 WL 3223419, at *5 (D.N.J. June 25, 2013); *United States v. Bergrin*, 2009 WL 1560039, at *10 (D.N.J. May 29, 2009). And there is a danger of flight here. It is true that the defendant has reported as required. This minimal compliance would easily bear the interpretation, however, that the defendant was lulling the authorities while abusing most of the other conditions of release.

The defendant has family ties to Croatia. From the Montvale home he occupies with his parents, the agents seized evidence that is consistent with an intent to flee if and when the occasion should arise. There is a March 15, 2016 printout of a Wikipedia article about Croatian personal identification numbers. There is a March 16, 2016, printout of instructions to apply for a U.S. passport. There are July 1, 2016 printouts about applying for a Croatian passport and eligibility for Croatian citizenship. (Gov't Exs. 17–20) The conditions of the defendant's release, by the way, include one that he shall "[s]urrender all passports and travel documents to PTS [and] not apply for new travel documents." (DE 15 at 2)

In addition, of course, there is evidence, as outlined above, that the defendant continued to run his fraudulent tax business from that very home.

The multiplication of charges in the Second Superseding Indictment and the strength of the evidence proffered by the government have, if anything, added to the defendant's incentives to flee. (*See* Tr. 8–10; Gov't Brf. (DE 73) at 15 (proffering that evidence includes tax returns and testimony of corresponding clients that S corporations were fake and business expenses were inflated; financial records demonstrating that defendant failed to declare income; testimony of clients that refunds were diverted))

**Residing with parents/addition of mother as custodian**.

The defense proposes that Mr. Dunich-Kolb be returned to the Montvale residence where he has lived with his parents, and that his mother be added as custodian. The Montvale residence is the very location from which the

12

defendant committed the newly-charged crimes in the Second Superseding Indictment and violated the prior conditions of release. Records of the post-release tax preparation business, for example, were seized from that residence, in close proximity, as it happens, to the father's own work papers. (Tr. 12) He had the IRS divert refund checks of clients to a Las Vegas post office box, from which they were forwarded to the Montvale address. Thus far, then, the third-party in-home supervision by the defendant's father has been ineffectual.

Addition of his mother, who works 40 to 50 hours per week, is unlikely to improve the situation. The defendant continues to press the contention that his parents are dependent on him, suggesting that this would reduce any risk of flight. (DE 70-2 at 7 n.2) The point here, however, is that their custody would accomplish little by way of ensuring that he complies with conditions of release. As Judge Hammer pointed out, the defendant himself says that his parents have issues "that render them significantly reliant on the defendant to care for them. What that means, then, is that the very person whom the Court is entrusting to make sure that Mr. Dunich-Kolb complies by the conditions of pretrial release is essentially completely beholden to and reliant on the defendant for their care and is essentially completely compromised as a third-party custodian." (Tr. 16–17) Reviewing the matter *de novo,* I agree.

### Restrictions on computer use.

These are easily evaded, and new equipment can be purchased to substitute for any that is surrendered. The defendant's letter to "Fran," quoted above, establishes that he will use sophisticated means to avoid what he calls government "hacking" and avoid detection.

I conclude that no condition or combination of conditions will assure the defendant's appearance or protect the public from his crimes. In any event, I find it highly unlikely that he would abide by any conditions that I did impose.

## ORDER

For the reasons stated in the foregoing opinion,

IT IS this 28th day of November, 2018,

ORDERED that the defendant's motion (DE 70) to revoke an oral opinion and order of detention entered by Magistrate Judge Michael A. Hammer, Jr., is DENIED.

**KEVIN MCNULTY**
**United States District Judge**